Our next case is No. 21-10-277, United States v. Graham. Mr. Bresnahan. Thank you. May it please the Court, Mike Bresnahan representing Michael Graham. There are several issues here. I would like to start with the restitution issue, if I may. We're challenging the restitution ordered as to Ireland, Hill, York, Knutson, and Schoening. It's our position that the government did not adequately or failed to adequately to establish these claims through what I would describe as poorly constructed and poorly completed boilerplate victim impact questionnaires. And as to Dan Hill, I didn't see an impact statement. All I could find in the record was an interview that he gave, a partial interview that he gave, I think it was the FBI, that can be located at 2 ER 155, where he talks a little bit about investing. Mr. Bresnahan, help me on this. As to the people for whom there were counts of conviction, as to the victims for whom there were counts of conviction, is it your claim that the evidence isn't sufficient to support the amount of restitution or it isn't sufficient to support a restitution order at all? Well, the restitution argument centers around these specific individuals. I don't think any of these individuals were mentioned in any of the counts of conviction. There's one, because there's one you're arguing, because that count that related to her. Well, Ireland, yes. Right. But as to the others, so is your argument that there's no evidence that they were injured at all? Or is your argument that there's not sufficient evidence to support the amount of the restitution order? That they were not injured at all in the sense that there was insufficient evidence to connect them to the case. Was this argument at the district court? Well, yes, there was an argument at sentencing that restitution should not be ordered as to these individuals. And so that's what I'm working from. And all we have with regard to them are their victim impact statements. I mean, the victim impact statements do say that they were defrauded, or at least can be inferred that they were defrauded, and they have an amount. So is your problem that it's hearsay? And it was under penalty of perjury, right, these statements? Yes, they were.  No, not so much a hearsay problem. I think hearsay would be permitted. I think the problem was, in looking at the actual victim impact statements and the interview at 2 ER 155, there simply wasn't enough information provided by these alleged victims that they were defrauded in the way alleged in the indictment, or that they were really defrauded at all. They were simply inadequate. So I take it your argument is, I mean, the victims did say, I sent a bunch of money to Mr. Graham, and I didn't get it back, or didn't get all of it back in some cases. So I take it your argument is, well, that's not enough. There must be some evidence that the reason they didn't get it back, these particular victims didn't get it back or lost the money, was because of the things for which Mr. Graham was convicted? Is that, am I fairly summarizing your argument? Yes, Your Honor. Because there's clearly evidence of loss here. You're saying there's no evidence of causation. Correct, that they were connected to this specific scheme. And I would note that with regard to Hill, York, Knutson, and the Schoenings, none were mentioned in any of the counts of the indictment, none appeared at trial, none provided- Does it matter that this is a scheme crime, so that if there was a scheme, which was found that there was, and they gave them money and they lost money, do they individually have to have been defrauded? Well, yes, they have to be connected to the scheme in some way. Well, they're connected to the scheme. They gave them money and they didn't get it back. The question is, do they each individually have to be defrauded? Well, I don't, I'm not sure I agree with the idea that because they alleged that they sent money to Mr. Graham and didn't get it back, that they were necessarily- And we know he had a scheme to do that, because that's what was the finding, to do that by defrauding people. So the question is, do they individually have to assert that they were defrauded? Well, maybe I should answer it this way. Let's suppose that some of them, all of them perhaps, sent money to Mr. Graham for reasons having nothing to do with this, this other stuff that led to the convictions. It's not a fair inference that it had to do with this, it was part of the same scheme? Again, I'm not sure, I'm not sure I agree based upon the actual record here. There's simply- Do you think there's a tracing requirement of some? So as I understand the big picture in this case, the argument was, took money from clients and didn't put it into investments, but rather into his own account. And he was convicted of doing that. You know, sometimes it was mail fraud, sometimes it was wire fraud, but that's the basic allegation of the case. And these people are clients who said, I sent you money and it's not in my account, I didn't get it back. And so are they required to show it was his money, each of their individual money that was put into his StratEx account, or are they only required to show that I sent him money and it's not in my account anymore? I think they have to, at a minimum, show that they sent money to the StratEx account, it arrived there, and they did it for a particular reason. And the reason- The question they were asked is, what kind of financial loss have you experienced as a result of this crime, right? So the premise here is that whatever they're telling him is because of the crime, and the crime is this scheme. Were the victim impact statements, we have statements, we don't have whatever was sent, was there a cover letter of some kind that said that this person was convicted of X crime? I don't, it's a good question, I don't know what they were told, and so I don't know what they mean, or how they purported to answer to that question when the question contains the word crime. I don't know what they understood about the case. Again, these people were not, other than there being records that they wired or- For example, Mr. Knutson and his wife say, I gave Michael Crown $20,000 to invest in his automated currency trading program, which is the scheme, right? And I have no documentation, I received zero return for any of the initial $20,000. So he specifically says what he invested in and that he didn't get it back, why isn't that good enough? And as a result of this crime. Well, that's probably the most complete example that we could find among the statements that came back. The other ones were not nearly as complete as that. Well, but York says, I invested with Graham and was promised great returns in the Forex market. But invested in what? Why does any of that matter if they're claiming that they're victims of, again, a scheme? That's quite broad. This isn't your sufficiency challenge where there's not even, or there's a bare traceability requirement. This is simply, we're reviewing for clear error, whether for restitution, the district court could find by a preponderance of evidence. What evidence is there on the other side that it's not part of the scheme? Why aren't these bare victim impact statements under oath enough? Well, they have to at least present a prima facie connection to a particular, a specific scheme. Not the scheme alleged in the indictment, not a scheme. This crime. There could have been four. As a result of this crime. Pardon me? It was as a result of this crime. Right, but we don't know what the victims are telling us when they say that. That's a boilerplate, that's a boilerplate questionnaire. But what more would they, why don't we ask, what more would they have had to have said given that there's, this doesn't even need to be charged conduct. So what more do they need to say to suffice? I think they could have been coached for a little bit, first of all. Not to say, not to make stuff up, but to say the things they needed to say to connect the money they sent to this particular alleged scheme that led to convictions. What they probably should have said is, I sent money, this was the agreement, and these are the facts upon which I base my opinion that there was fraud. They didn't do any of that. But that would require them to establish the elements of an offense. That's the first part of the statute, but then the statute goes on to say that if you're dealing with a scheme such as this, you simply have to show direct harm. But you have to show a nexus though, you have to show a connection between the money going out and a connection to the actual alleged scheme in the indictment. And that just didn't happen here. One of the individuals got close, but we don't know that it was the same operation, the same alleged scheme as the one alleged in the indictment. Do you want to take some time on any of the other issues? Well, real quickly, on the insufficiency of evidence claim. It was sort of the same issue on a different guise, but go ahead. With respect to counts 2, 5, 6, 9, 10, 14, 15, 18, 19, and 20, all of which involve monies going out to Cecilia Cordova Valenzuela, our argument here is that there could only have been a finding of guilt by the jury, guilt beyond a reasonable doubt. If we know that Mark Jacobs, Christopher York, Dan Hill, Kenneth and Emily Ward, Harrison Andrews and David Erickson were investors, were real investors. The only proof that the government introduced a trial that they were true investors in this alleged... Well, wait a minute. The counts are about particular wire transfers from a fund, and they don't relate to any particular investor. No, no, the counts don't relate to that, but what I'm saying... Okay, so just a minute. Yeah. So the, and we know that a substantial portion of the money in this fund, maybe 50%, I think was said at one point, at least that, let's assume it's 50%, were from the investors as to which there was evidence. There was evidence, yes, there was money coming into StratEx... From investors as to which we have evidence that they were defrauded. Right, some of whom were proven to be investors. Right, okay. And some of whom we argue were not. Okay, so let's say it's 50%. I don't know if it's 50%, but it was a lot, a good portion of this StratEx fund, and our account. And so suppose, and there was some testimony about how you would figure this out, and at least one of them, it seems to me, is for each dollar that then comes out to the personal account, say 50 cents of it is from the investors, that we know were investors. So why isn't that good enough? Well, our argument is that... In other words, a pro-rata approach to it, forget about the other investors. Well, our argument is first of all, you shouldn't use a pro-rata approach, you should use a pooling approach. Well, I know, why? Pardon me? Why is that required? Again, this is a scheme crime, right? Because money is fungible. Exactly, because money is fungible, you can't trace it. And because you can't trace the money from one investor to go out the other end, so you have to have some other way to figure out whether the money that's coming out is money that was fraudulently obtained. Right, and that's the challenge for the government in a case like this. It's their burden to establish that the money had to have been... All of it? Or, I mean, every penny of it? Or, you know, 50 cents on the dollar? Well, let me, if I may explain it this way. With respect to Jacobs, York, Hill, Ward, Andrews, and Erickson, who we claim were not proven to be investors in this case, the money they put in during the same time frame of the counts I just read off, the money that they put in was about $261,000. That exceeded the amount of money that went out to Cecilia Cordova during that same time period. If you use the pooling theory as the defense expert, Hogan, suggested we use, it leaves the possibility that all of the money that went out to Cecilia Cordova was funded by people who were not determined to be investors in this case. And if that's so, no juror could conclude beyond a reasonable doubt that those monies were part of that fraud. Whether there was fraud in other ways with other victims, okay. What about, we have a case, Lazarenko, which seems to say that you don't need to do that. Do you have any comment on that? What Lazarenko says is that... I think it rejects any tracing requirement. And what's your best authority for requiring that the jury could not depend on the government's theory of the scheme rather than yours? Right, I haven't read the case that we're looking for right now. Such a case as this where the wire at issue is a wire transfer of funds that are connected to an unlawful activity, the in furtherance inquiry may be met without a strict tracing of the wired funds. I would have to read the case, read the context. Well, I mean, that's your job as a lawyer is to read it before you come in here, not afterwards. Well, I can't respond specifically because I'm not sure whether the facts in that case could be transferable to this case. I'm just saying that if monies come out from people who are investors and then another group of people who haven't been determined to be investors and they are pooled, they accounts where money's coming in and going back out to the offshore accounts and so forth. And if it's possible that the monies that came in from non-investors was used to send out to personal accounts, then those accounts, the accounts involving those transfers are not criminal. That's our position. That's our theory. Thank you, Mr. President. We'll give you a couple minutes for rebuttal. Any other issues you want to address? Okay, thank you. Ms. Clapper. May it please the court, my name is Monica Clapper and I represent the United States. All of the district court's rulings in this case that have been challenged on appeal, and there are five, have ample support both in the record factually and legally and should be upheld by this court. Can I ask you to first address a topic that your friend didn't address? I'm interested in the guilty plea issue or the rejection of the guilty plea issue. The judge says, I won't accept this plea agreement because, and perfectly entitled to do that. He then goes on to say, I think it's he in this case? Yeah, it is. He then goes on to say, but here's, I would accept it if it didn't have a cap. And in general, judges are not supposed to say what would be acceptable to them, but rather simply to say what would not be acceptable to them. Well, and that's not precisely what happened here, Judge. Well, tell me what you think happened. Well, what happened is the judge said he was rejecting the plea agreement. He gave all of the reasons why, you know, in accordance with this court's prior case law requiring that. Yeah, that's all fine. Nobody thinks there's a problem with that. And then he did what he's actually required to do under Rule 11C, is give the defendant the opportunity to withdraw the guilty plea or to go forward with the guilty plea. And the language that is seized on appeal is actually the judge telling the defendant, if you wish to go forward with your plea of guilty to mail fraud in violation of the statute, a Class C felony, without a stipulated cap, the court will accept the plea. Is that okay? See, it seems to me, however it occurs and whatsoever it's phrased, I'm not sure. In this case, it's fairly close to the line. But isn't our law generally you may tell somebody what agreement you would accept, what you would reject and why you would reject it, but you may not tell them which one you would accept? That is. And isn't that essentially what he was saying? Look, if you want to plead guilty to one count with no cap, I'm fine with that. Now, in this case, I must say it's less troublesome because it is the necessary inverse of what the judge actually said before. The only reason I'm rejecting your agreement is because it has a cap. So it seems to me quite clear as a matter of logic that he would have accepted one without a cap. But I'm trying to figure out where the line is on this. In other words, our cases in the past, and they were different facts, just sort of say, look, you can say why you're rejecting something, but you can't say what you would accept. And it seems to me the judge did say here what he would accept, which is a plea to one count with no cap. And in this particular case, I think Your Honor is correct. That that was just the it was it was obvious that the court the court specifically said that he was rejecting the plea agreement because. So let me ask you a hypothetical. So the difference is very subtle. But he didn't say because of the cap, he said because of a cap. And the possible implication was don't come back if you want to try. You may as well. Well, the only kind of agreement I would accept is one without any cap. Not without this particular cap. Well, and that certainly is the argument that that has been raised. I understand. I want to know why. You know what? In context, was he saying the cap, even though it's written as a cap? Or was he saying essentially you complete without the agreement, this particular agreement? Was he saying I'm not going to take any? What was he saying? Well, in the context of this exchange on the record, the court several times referred to this plea agreement. The court used the phrases and I'll give them exactly. You know, the cap in this case, the stipulated cap under this plea agreement, that those are all other statements within the same just two or three pages of the transcript at 115 to 119. I guess that's four pages where the judge is talking about this. And it is very clear. Let me be clear. I think that's fine. I think a judge can say I'm not going to accept this cap. I'm not even sure a judge can say, by the way, I won't accept a plea agreement with any cap because I don't believe in caps. I'm not sure that he's entitled to. I'm not sure that a judge is required to accept a plea agreement with a stipulated sentence or a cap. But here he says. But I would accept one. I would accept your plea. This very plea agreement, this very plea is in front of me. You take out the cap. We're fine. I'll take it. The judge was referring to the guilty plea, not the plea agreement. What else was in the agreement other than the cap? There were there was another stipulation about agreeing to time served if certain conditions were met. I don't I think the record is pretty clear that those conditions weren't going to be met. So you read what the judge saying is, look, if you if you just want to plead guilty today to this one count. That's OK with me, but I'm not going to accept any. But I but I'm not no other agreements. If that happens, you just plead guilty to one count. And then and that is borne out by what the judge says after that, Your Honor. And that is, I do have to warn you that if you go forward with your plea of guilty to mail fraud, I have the authority to sentence you all the way up to the statutory max. So all of that together, and it's just a just normal course in proceedings where pleas are rejected. The guilty plea, the question is, and the directive under Rule 11 is, what do you do with the guilty plea? Then there's already been a guilty plea. It's already been accepted. The only question is, is the plea agreement going to be accepted? So the defendant either point that the party, the parties have stipulated to a cap sentence and that cap sentence binds the court. It results in this case in the over influence of the parties on this court sentencing discretion, which sounds like which is sort of a piece with what he said later, which is you can plead without a cap. So it seems to be saying generically. If you go back and negotiate another agreement with a cap, I'm not going to take it. Is that a fair reading? And I'm not sure it is not that it really isn't. I don't think I agree with Judge Hurwitz that if that's what he was saying, that's OK. I think that's precisely what's not OK. So why isn't that what he was saying? Several, several points here. One is in between the statements, Judge Brisson, that you just recounted, the judge specifically says, I'm not interfering in plea negotiations. That's not my position. And then goes on to talk about the stipulated cap in this case, the guilty plea in this case, the 20 month stipulated cap. There is nothing in the evidence in the in the record to suggest, you know, that this the use of the term stipulated cap refers to all future plea agreements with stipulated caps that that the judge would reject him. There's just nothing else in this record. And there's. I mean, I suppose we can pretty much guess, assume that if they come back with a stipulated cap of the sentencing, in fact, God, the judge would have said, OK, I eat the 70 months or whatever it was. And the judge may well have said OK to any other form of stipulation of stipulated cap to one lower than what he got, one higher than what he got was it was an under under guideline sentence. Is that right? Seventy two months. Yes. So I take what I'm taking. What you're saying is he already pleaded guilty. Now, the question was whether the judge was going to approve the plea agreement. Yes. The judge said, I'm not going to write because it has a cap. Now, he says, if you want to keep your plea of guilty, you have no cap because I haven't agreed to the plea agreement. And you should know that if you want to keep your plea of guilty. And that is Mr. Graham through counsel says, I don't want to plead guilty. I want to go to trial. And that is precisely what you see that's happening. Yes. And that is precisely what rule 11 requires. You don't think he was saying I would accept an agreement, a different agreement without a cap? Well, he specifically was referred to the guilty plea as opposed to a plea agreement. And there's a very big difference between the two. And particularly in a change of plea proceeding and a sentencing proceeding that is based on a plea agreement. The language is very important. The difference is very important. And certainly, your honors. I see you say if you wish to go forward with your plea, he's saying no agreement here. I've just already turned it down. You've already pleaded guilty to this account. If you want to continue to go forward with that plea of guilty. That's fine with me, but you'll the court will accept it. But absolutely. But you won't. But there is no agreement. There is no stipulation. I got you. Right. There's no stipulation. And then not just stipulation. There's no agreement. Right. There's no agreement. And then you want to come in briefly on this. The restitution issue that he did spend time on combined with the tracing question on the counts, because they're somewhat related. Sure. So on the restitution issue. That that one, you know, the court is reviewing for clear, clear error because these are factual findings that the court is looking at. And the burden of proof for the government was just a preponderance of the evidence. Very different than beyond a reasonable doubt. Do we know whether these documents, I mean, it talks about this crime where these victims told what this crime was. There is nothing in the evidence to show what the cover letter to the to the victims says. It's either a cover letter or maybe the face of an email if it's sent to them that way, though, that did not appear in the in the evidence. But Judge Brisson, I think you really were on to it with the the victim impact statements did actually have attachments to them. And for much of them, I was starring them as as we were talking. Of course, Sue Ireland, she testified at trial about the misstatements made to her, the material misrepresentations made to her and the money she gave as a result. Dan Sherman, he submitted by the way, is from why she was acquitted that that count. He was acquitted on that count. This is because she really seemed to be relying on this other person primarily and not on Michael Graham. Well, that was the entire somewhat relevant to how to how her evidence ties into the restitution. And that that was the the the beginning to the end of the cross examination of her was really on that particular topic. That third party intermediary and kind of trying to point the finger to that person. So the judge could have relied on her testimony and taken a different view of it for purposes of the preponderance of the evidence as to whether she sufficiently relied on Michael Graham. Absolutely. And the judge specified right on the record why he was including her and that he was taking that that approach. He was you know, he found sufficient her statements about the material misrepresentations and why she sent the money. They said by Mr. Graham, not by somebody else. Right. And and Dan Sherman in particular, these are just examples. He submitted the very same fake account statements that some of the other victims talked about in his victim impact statement. Bruce Knudsen, I think, was was another one who was very specific about the statements that were made to him and who they were made by. And then Dan Hill had the 302 from the his his interview with the FBI. Now, this was the objection, as I think was clarified in the argument, was is not to the amount. It's to what there is specific. These individuals were specifically injured by this, by these by the scheme or by the crime. Sure. The causation. And I think that that is what all of the evidence I just recounted goes to is is the causation, the connection between these victims and the crime. But this was all far and above what the judge needed to make his ruling. On this, then what work does the word directly do in the statute? Right. Any person directly harmed by that in some of these cases, particularly in the case of Miss Ireland, who is that not indirect? And why not? I see. Yeah, you can you can take time. OK, right. And this is on the restitution. No, that's not what the direct goes to. OK, certainly the statements can come to the miss. The material misstatements can come to a victim indirectly. The harm being direct is is is different that the victim was included in the group of people who are part of the scheme, who are directly harmed by the defendant's conduct in that they provide the money and the defendant misappropriates it. That's that's the direct harm. OK. There are no no other questions. Will you close? Well, thank you. We do request that the court affirm the district court on all of the rulings that are at issue on appeal. Thank you, Mr. President. We'll give you two minutes. I'll be brief. Just a couple of things, if I may. With respect to the guilty plea. I think the fact that Mr. Graham immediately asked the case be set for trial tells us that he interpreted the court's rejection of a guilty plea with a cap. So I would characterize it took away really any incentive to continue. Well, but here's here's my even if I thought there was a violation of Rule 11 here, I'm not clear what we could do. The government's plea offer was obviously conditioned on you're not going to trial. You went to trial. We may or may not affirm the result of trial, but just assume for purposes of discussion that we find that there was no reversible error trial. What are we supposed to do at this point? We can't order the government to negotiate with you. It's not like they broke the plea agreement. So I mean, the government says you should have raised this earlier. I don't know whether that's true or not, but I'm trying to figure out what possible remedy we could give you, even if we agreed with you. Well, it is interesting because normally you see this the other way around. Person waves a trial and pleads guilty. And now they want to get out of the. Yeah, I want to get out of that. I understand. But I don't understand what we're supposed to do for you. Well, if he's in time, I think he has a due process entitlement to negotiate. But you're right that the remedy does become a little bit fuzzy if I'm asking the court to order the can order the government to negotiate. Negotiate your obligation to negotiate. Do that. I'm not going to ask Miss Clapper. But my guess is if we see, you know, she'd say, no, I don't. That was a deal conditioned on not going to trial. So I'm just not sure. That's why the mandamus thing makes some sense, because we can intervene at a point when a remedy still can be given. I'm not sure it's a requirement, but I'm just not clear what remedy we can give you. If we even if we agree. Well, if there's no other remedy, then the conviction be vacated. Even if we thought you got it, even if we thought Mr. Graham got a fair trial. Yes. Yes. It's it's it's difficult. But yes, I don't I don't see any other remedy. I agree. The premise of the mandamus cases has to be and I think was that there's no essentially no remedy available later. That's usually why we grant mandamus. Kyle was a mandamus case, right? Well, I believe. No, maybe it wasn't. I'm not sure it was. I would say this mandamus. I don't think it's required. I think it is. So why isn't Kyle in this posture? Why wasn't Kyle in this posture? Why? I'm sorry. Wasn't Kyle in this posture? Kyle Kyle had a cow was there was an acceptance of a later plea agreement. So we could say we throw out the second plea agreement because the judge. Right. Judge nudged you into it and go back and you can either try the case or not try it. But here it may be that the only time to once you go to trial and if you lose and we find no error at trial, it may be that we can't fix it. 11 rule 11 problem at this point. And all I can say, you may be right, your honor. All I can say is that if my client was denied the due process right to negotiate and felt that he was forced into going to trial, he was deprived of an option that he shouldn't have been deprived of. And there must be some remedy. And I can think of no other remedy than simply setting aside the conviction. I can't think of one either. That's why I was asking. Yeah. With respect to Ireland and her connection for restitution purposes, Graham made no representations to Ireland before she invested. Probably one of the reasons he was found not guilty on that count. And we argue that any post-investment statements by Graham. But she did speak to him fairly frequently, as I recall, later on. But not before she invested. Yes, but but but when she tried to get her money back and so on. There were some communications. I think many actually. Asking for the money back. And getting reassured by him and so on. So he was she was communicating with him. Right. But that doesn't prove the elements of fraud. It's it's problematic. It's bad business at the very least. Well, why is the fact that she left some money there, you know, and didn't try to get it back for quite a while? Why? Why? She was getting the two or three thousand dollars a month. And at the time she tried to get it back, she didn't get it back. And he kept telling her stories that weren't true. I mean, that seems enough for preponderance of the evidence. I mean, you can understand where the acquittal came from. But that doesn't mean that there wasn't evidence of sufficient evidence of Graham's connection to all of this. Well, I I'm not in a position to concede that the statements that he made to her afterwards were not true. I I can't I can't concede that point. I understand the court's question and concern. Our position is that all of the post investment statements made by Mr. Graham to Miss Ireland were either accurate or they weren't material to her decision to get in and stay in her. Along the way, I think she alleged that he he made representations about how he would use her two hundred and fifty thousand dollar investment that he wouldn't invest. He would only invest the profits and preserve the corpus. But that I think that was mischaracterized by the government. He would have had to use some of the corpus to get some of the profits going to begin with. And if there weren't any profits initially, he would have dug deeper into the corpus or the principle, I guess you might say, to be to try to begin generating profits that he could then churn and would allow him to return the principle. OK, thank you, Mr. President, unless you have anything else. No, thank you. OK, thanks to counsel. The case will be submitted.
judges: BERZON, HURWITZ, JOHNSTONE